```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

FRANCIS CARLING,                    :

                Plaintiff,          :    10 Civ. 4573 (PAE)(HBP)

    -against-                       :    OPINION
                                         AND ORDER
KRISTAN PETERS,                     :

                Defendant.          :
-----------------------------------X
```

PITMAN, United States Magistrate Judge:

I.  Introduction

By notice of motion dated January 18, 2011 (Docket Item 97), plaintiff Francis Carling moves pursuant to Rule 11(b) and and (c) of the Federal Rules of Civil Procedure and the Court's inherent powers to recover sanctions against defendant Kristan Peters. Peters opposes the motion and seeks reimbursement of costs in the amount of $20,000.00 for having to respond to the motion.

For the reasons set forth below, Carling's motion is denied, and Peters' request for reimbursement of costs is also denied.

II.  Facts

Carling's motion asserts that Peters engaged in sanctionable conduct in connection with the settlement conference that was conducted in this case on November 4, 2010 (Plaintiff's Brief in Support of His First Motion for Sanctions, dated Jan. 18, 2011 ("Pl.'s Brf."), (Docket Item 98), 2-13).  Specifically, Carling contends that Peters (1) "insisted on the Court conducting a [settlement] conference, when she had little interest in settlement, and was in fact motivated by a desire to delay or avoid her deposition," (2) "eavesdropped on a private conference between the Court and plaintiff," (3) "violated a confidentiality order issued by the Court by disclosing what she had overheard . . . to the [a]rbitrator hearing a companion case" and (4) "made misstatements of fact to the Court when her conduct was called to its attention . . . . " (Pl.'s Brf. at 1).  Carling seeks the following sanctions:  (1) a finding that Peters engaged in professional misconduct and made false and misleading statements to the court, or, in the alternative, a hearing on these allegations, (2) a referral of this matter to the Committee on Grievances of the Southern District of New York and (3) other relief as justice may require (see Docket Item 97; Pl.'s Brf. at 1).

    A.    Peters' Conduct in Connection
          <u>with the Settlement Conference</u>

        Carling first contends that Peters requested a settlement conference in bad faith because she requested the conference only to delay or avoid her deposition (Pl.'s Brf. at 2-3). Specifically, Carling contends that after the settlement conference was held, Peters "refused to reschedule her deposition [which was originally noticed for October 29, 2010], and served a set of interrogatories which did not comply with the Local Civil Rules, but which she insisted had to be answered before she would submit to a deposition" (Pl.'s Brf. at 2). Carling also states that he "was very skeptical about the utility of [a settlement conference,] because his prior settlement discussions with defendant left him unconvinced that she had any serious intention of settling" (Pl.'s Brf. at 2). Based on the above factual allegations, Carling argues that "it may fairly be inferred . . . that defendant's request for mediation was not made in good faith . . . . " (Pl.'s Brf. at 3).

        Carling next contends that during the settlement conference, he exited the jury room after a private session with me and "found [] defendant [] sitting on the bench outside the jury room, in the closest position possible . . . to the door" (Pl.'s Brf. at 3-4). On the basis of this factual allegation, as

3

well as Peters' alleged disclosures about the settlement conference to the arbitrator in a related proceeding, Carling argues that Peters intentionally listened to his private session with me (Pl.'s Brf. 3-4).

    B.    Peters' Conduct in
           Connection with the Arbitrator

As noted above, Carling contends that Peters discussed the settlement conference in an e-mail to the arbitrator in a related proceeding (Pl.'s Brf. at 4-5). In so doing, Carling argues that Peters violated a "mediation confidentiality order" entered by the Court at the outset of the settlement conference that "unless the case was settled, all statements and proceedings in the mediation were to be held in strict confidence, and not disclosed, referred to or utilized in any fashion thereafter"[1] (Pl.'s Brf. at 3).

In alleging a breach of the putative "mediation confidentiality order," Carling refers to the following statements that Peters made to the arbitrator in an e-mail sent on November 10, 2010:

---

[1] As discussed in the next section, this statement is inaccurate. No such order was entered at the settlement conference. Notwithstanding this, I summarize Carling's argument as set forth in his motion papers.

4

> Carling's views of Judge Pitman are the opposite of what happened.  There was a settlement conference, and Mr. Carling was in a screaming match with Judge Pitman that was so loud one could hear it from outside the door on the other side of the courtroom.  Judge Pitman made clear that he though [sic] Carling's fraud and defamation claims had no legs and that this was merely an attorney's fees case on his side.  So Carling's contentions to the contrary are nonsense.

(Pl.'s Brf. at 5) (emphasis in plaintiff's brief omitted). Carling states that Peters made these statements in response to his e-mail to the arbitrator, in which he stated:  "Both Judge Marrero and Judge Pitman have now had ample exposure to [defendant's] style of litigation, and I am confident that matters in that case will go from bad to worse, from her perspective, in the coming weeks" (Pl.'s Brf. at 4) (emphasis in plaintiff's brief omitted).

       Carling and Peters then sent a series of letters to the Court dated November 10, 2010 in response to each other's contentions.  Carling first wrote to the Court and requested that "a swift and adequate sanction" be imposed upon Peters for her conduct (Pl.'s Brf. at 5).  Peters responded by letter.  Carling contends that this letter contains a number of false and/or misleading statements (see Pl.'s Brf. at 5-6).  Specifically, Carling states that the following statements made by Peters are false and/or misleading:  (1) "Previously, [plaintiff] told the arbitrator there was a mediation before [the Court] last week,"

5

(2) "In [plaintiff's] last e-mail, he indicated that, after that mediation, he had reason to believe that Judge Pitman 'had ample exposure to Ms. Peters' style of litigation, and I am confident that matters in that case will go from bad to worse, from her perspective in the coming weeks,'" (3) "All of this was to imply that, after the mediation, [the Court] had a negative impression of me, which was in violation of the spirit of the mediation," (4) Carling "also tried to make the arbitrator believe that, right after the mediation, you now had 'ample exposure' to me and 'things have gone very badly for me in court' and that there were findings here in court or communications that caused him to represent that he had been successful in 'demonstrating' my alleged 'misconduct'" and (5) "Given that the mediation was the only time I appeared before you, he [plaintiff's] suggestions were clear that you stated something in mediation that caused him to represent these things to the arbitrator" (Pl.'s Brf. at 5-6). Carling contends that these statements were inaccurate because it was Peters who told the arbitrator that a settlement conference had been scheduled before the Court, that Peters misquoted Carling to the Court in order to imply that his comments to the arbitrator were made in the context of the settlement conference

6

and that Peters appeared before the Court on more than one occasion (Pl.'s Brf. at 7-9).[2]

III. Analysis

As noted above, Carling moves for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure and the Court's inherent powers.[3] Peters, who, like Carling is proceeding pro se, seeks reimbursement of costs incurred in responding to this motion, although she does not identify any legal basis for such reimbursement.

Rule 11(c) permits a Court to impose sanctions for violations of Rule 11(b). Fed.R.Civ.P. 11(c)(1); Perez v. Posse

---

[2]Carling also contends that Peters' second letter to the Court on November 10, 2010 warrants sanctions because it contained a reply to Peters' Motion to Comply with Judicial Orders dated October 4, 2010 (see Docket Item 34) which was (1) "unauthorized" because it was not filed through ECF and (2) "untimely" because the time in which to file a reply had expired under the Local Civil Rules of this District (see Pl.'s Brf. at 12-13). I do not address this contention, however, because the mere fact that a filing was not timely submitted or was improperly filed -- without more -- is simply not sanctionable conduct under Rule 11 or the Court's inherent powers.

[3]Carling also raises arguments that (1) Peters should be held to a higher standard of professional conduct as a result of her prior discipline in this Court and (2) notwithstanding her pro se status, Peters should be held to at least the same standard of professional conduct as any lawyer practicing before this Court (see Pl.'s Brf. at 13-16). Neither of these arguments, however, identify a legal basis for the imposition of sanctions against a party.

Comitatus, 373 F.3d 321, 325 (2d Cir. 2004); Murawski v. Pataki, 514 F. Supp. 2d 577, 590 (S.D.N.Y. 2007) (Holwell, D.J.) ("[T]he decision to impose Rule 11 sanctions rests in the sound discretion of the court."). Rule 11(b) is violated when an attorney submits a pleading, motion or other paper for an improper purpose, or knowingly presents a frivolous claim or legal argument. Ball v. A.O. Smith Corp., 451 F.3d 66, 70 (2d Cir. 2006). An oral representation violates Rule 11 when: "(1) it [] violate[s] the certification requirement of Rule 11(b), e.g., by advocating baseless allegations, and (2) it [] relate[s] directly to a matter addressed in the underlying paper and [is] in furtherance of that matter to constitute advocating within the meaning of subsection (b)." O'Brien v. Alexander, 101 F.3d 1479, 1489-90 (2d Cir. 1996).

Here, the only conduct at issue that is arguably covered by Rule 11 is Peters' submission of signed letters to the Court on November 10, 2010. The remaining conduct -- i.e., Peters' alleged request for a settlement conference in bad faith (which Carling does not allege was made in a signed writing to the court), Peters' alleged close proximity to the jury room during my private settlement talks with Carling and Peters' allegedly improper statements to the arbitrator concerning the settlement conference -- either (1) does not concern a pleading,

8

written motion, or other signed paper submitted to the Court, (2) does not concern an oral representation that satisfies the two requirements set forth above or (3) was not directed to the Court, but directed to a third-party arbitrator.  Thus, none of the remaining conduct cited by Carling is proscribed by Rule 11.[4]

Turning to Peters' November 10, 2010 letters, Rule 11 sanctions may not be imposed for the statements contained therein because Carling concedes that he has not complied with the safe harbor requirements set forth in Rule 11.  Rule 11(c)(2) requires that "Rule 11 motions [] be served on the opposing party 21 days prior to their filing, in order to afford that party an opportunity to withdraw their allegedly sanctionable claims." Fierro v. Gallucci, 423 F. App'x 17, 18 (2d Cir. 2011), citing Fed.R.Civ.P. 11(c)(2) and Hadges v. Yonkers Racing Corp., 48 F.3d 1320, 1328 (2d Cir. 1995).  In his motion papers, Carling states that "the challenged conduct . . . had already occurred before plaintiff

---

[4]A substantial portion of Carling's motion also concerns Peters' alleged breach of a "mediation confidentiality order" that Carling contends was entered by the Court at the settlement conference.  No such order, however, was ever entered.  At the outset of the settlement conference in this case (and as in all cases in which I conduct a settlement conference), I simply advised the parties of the provisions of Rule 408 of the Federal Rules of Evidence which limit the use of statements made in settlement conferences.  I have never attempted to prevent anyone from repeating what is said at a settlement conference.

learned of it, and there was no opportunity to afford defendant 21 days to eliminate the misconduct" (Pl.'s Brf. at 18-19).

Carling's argument that his non-compliance with Rule 11(c)(2) should be excused because the allegedly sanctionable conduct had already occurred and could not be remedied is without merit. Simply put, Rule 11(c)(2) addresses <u>when</u> a Rule 11 motion can be filed with a court. The applicability of this requirement does not turn on whether the conduct has already occurred or whether the conduct can be remedied. Thus, notwithstanding the nature of the conduct at issue, Carling was required to serve his Rule 11 motion on Peters 21 days prior to filing it with the Court -- which, here, would have been 21 days prior to January 18, 2011. Because Carling has failed to do so, I need not reach the merits of his argument with respect to Rule 11 sanctions.

Courts may also punish improper conduct pursuant to the inherent power that stems from the courts' need "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43 (1991). "One component . . . is the power to assess costs and attorney's fees against either the client or his attorney where a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" <u>United States v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers of Am., AFL-CIO</u>, 948 F.2d 1338, 1345 (2d

Cir. 1991), quoting F.D. Rich Co. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116, 129 (1974).

In order to impose sanctions against counsel under this power, the court must find, with a "high degree of specificity," that the circumstances of their conduct constitute clear evidence that their claims were instituted and/or continued in bad faith. Oliveri v. Thompson, 803 F.2d 1265, 1277 (2d Cir. 1987), quoting Dow Chem. Pac., Ltd. v. Rascator Mar. S.A., 782 F.2d 329, 344 (2d Cir. 1986). Bad faith may be found where the conduct at issue is "entirely without color" and was taken "for reasons of harassment or delay or for other improper purposes." Oliveri v. Thompson, supra, 803 F.2d at 1272. In short, the court must find "clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 79 (2d Cir. 2000), quoting Agee v. Paramount Commc'n, Inc., 114 F.3d 395, 398 (2d Cir. 1997).

Sanctions pursuant to the Court's inherent powers for the conduct alleged in this motion are not appropriate. For example, while Carling contends that Peters requested a settlement conference in bad faith to delay or avoid her deposition, he does not demonstrate bad faith. The only support that Carling offers for his contention is that (1) he was skeptical of Peters'

11

motives and (2) Peters served improper interrogatories and refused to reschedule her deposition until those interrogatories were answered (see Pl.'s Brf. at 2-3).  Carling's state of mind, however, does not bear on the issue of Peters' good or bad faith motivation for requesting the conference.  It is often the case in litigation that parties have sharp disagreements concerning the contours of any potential settlement, and, further, a party has an absolute right to refuse to settle regardless of whether that position is reasonable.  Moreover, shortly after Peters served her interrogatories, Carling made an application to the Court to strike the interrogatories and to compel her deposition -- an application that was granted on November 16, 2010 (see Docket Item 59).  Peters was directed by the Court to appear for her deposition on December 16, 2010, and the deposition went forward as scheduled.  Carling refers to no other evidence that substantiates his contention that Peters engaged in dilatory tactics with respect to her deposition.

   I also decline to impose sanctions with respect to Peters' alleged conduct during the settlement conference.  During my private session with Carling, I did have a fairly animated discussion with him concerning the merits of his fraud claim, and, given the acoustics of the jury room and the courtroom, it is possible that Peters might have heard my comments while seated

by the coat rack.  The accuracy with which she recounted my comments to the arbitrator certainly suggests that she did overhear them.  The fact that Peters was excluded from a portion of the settlement conference should have been sufficient for her to understand that I did not intend for her to hear my discussion with Carling, and her remaining within earshot and then repeating my comments was extremely ill-mannered.  Peters being ill-mannered, however, is not a sufficient basis to impose sanctions, especially in the absence of prejudice to Carling.

With respect to Peters' statements to the arbitrator concerning the settlement conference, I decline to impose sanctions.  As explained in footnote 4, I never entered a "mediation confidentiality order" during the November 4, 2010 conference.  Thus, while making comments about a settlement conference is certainly not helpful to -- and may even be destructive of -- further productive settlement discussions, Peters was not in violation of a court order when she made the comments.  Further, Rule 408 of the Federal Rules of Evidence merely renders evidence of settlement discussions inadmissible in court; it does not create any privilege or other protection from disclosure.  <u>See</u>, <u>e.g.</u>, <u>Primetime 24 Joint Venture v. Echostar Commc'n Corp.</u>, 98 Civ. 6738 (RMB)(MHD), 2000 WL 97680 at *4 n.5 (S.D.N.Y. Jan. 28, 2000) (Dolinger, M.J.) ("[Rule 408] does not create a settlement

13

privilege . . . . "). Thus, in the absence of factual allegations demonstrating prejudice to Carling resulting from Peters' statements or a larger/continuing effort by Peters to hinder the progression of the case in bad faith, Peters' statements are not egregious enough to warrant sanctions pursuant to the Court's inherent powers.

Finally, with respect to the allegedly false and/or misleading statements in Peters' November 10, 2010 letters to the Court, I find that the statements -- even if false and/or misleading -- are also not sufficiently egregious to warrant sanctions.  For example, the first statement at issue concerns which party told the arbitrator that a settlement conference was scheduled before me (see Pl.'s Brf. at 7-8; Opposition to Carling's First Motion for Sanctions, undated ("Def.'s Opp."), (Docket Item 142), 22-23).  I am hard-pressed to see how this statement goes to the merits of the underlying dispute one way or the other, much less how this statement was made in bad faith such that it is worthy of sanctions pursuant to the Court's inherent powers.  Carling argues that Peters violated former Local Civil Rule 83.12 of this District[5] in disclosing to the arbitrator that I was conducting a settlement conference.

---

[5]The former Local Civil Rule 83.12 is now Local Civil Rule 83.9(1).

However, that rule -- which prohibits the parties from disclosing the identity of their mediator -- applies to this District's Alternative Dispute Resolution ("ADR") Program.  The rule simply does not apply to a settlement conference before a Magistrate Judge conducted pursuant to an order of reference from the District Judge assigned to a case.

The next set of allegedly improper statements at issue concern Peters' statements that Carling made certain representations to the arbitrator in order to create a false impression about Peters' "style of litigation" and how she was perceived by the Court (see Pl.'s Brf. at 8; Def.'s Opp. at 23-24).  These statements also do not warrant sanctions.  Carling contends that Peters "deliberately misquoted [him] by inserting 'after the mediation' into the quote" (Pl.'s Brf. at 8).  However, the words "after the mediation" <u>precede</u> the quotation (see Ex. 4 to Pl.'s Affirm.).  Thus, at most, Peters is characterizing the context in which Carling's statements were made.  A characterization of a statement -- even if it is ultimately inaccurate -- is not sanctionable solely because the opposing party disagrees with it. Morever, copies of both Carling's and Peters' e-mails to the arbitrator were provided to the Court without alteration.  Again, I am hard-pressed to see how Peters' characterization of Carling's statements to the arbitrator warrants sanctions pursuant

15

to the Court's inherent powers -- powers of the Court which must be exercised with restraint and discretion.  See Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323, 335 (2d Cir. 1999) ("[P]rior decisions caution that although the decision to impose sanctions is uniquely within the province of a district court, [a court] nevertheless need[s] to ensure that any such decision is made with restraint and discretion."), citing Chambers v. NASCO, Inc., supra, 501 U.S. at 43 and DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 136 (2d Cir. 1998).

The final allegedly improper statement at issue is Peters' statement that she had only appeared before the Court on one occasion -- at the settlement conference (see Pl.'s Brf. at 8; Def.'s Opp. at 24-25).  Carling states that this statement is false because the parties (1) had at least two conference calls with the Court prior to the settlement conference and (2) engaged in motion practice for some time (see Pl.'s Brf. at 8).  Even if Carling is correct, it is again unclear how the falsity of this statement is sufficiently material to warrant sanctions.

To be sure, improper conduct that may not be sanctionable in and of itself may become sanctionable when taken in the aggregate with other improper conduct.  However, even considering the conduct asserted in this motion in the aggregate,

16

I decline to exercise the Court's inherent powers to impose sanctions on Peters at this time.

I do note that Carling and Peters have spent an inordinate amount of time squabbling over insignificant, collateral issues.  The parties have not always been courteous, respectful and professional toward each other.  The parties have also been advised by me that their time would be far better spent focusing on the merits of the underlying dispute and not sniping at each other.  Nevertheless, the conduct presently at issue is not sufficiently vexatious, wanton or oppressive such that the exercise of the Court's inherent powers is justified.

For the same reasons, Peters' request for reimbursement of costs incurred in responding to this motion is also denied. First, Peters does not specify what authority she is relying on in requesting reimbursement.  Presumably, Peters is relying on 28 U.S.C. § 1927 as she also seeks reimbursement in her opposition to Carling's second motion for sanctions pursuant to that authority (see Defendant's Opposition to Carling's Second Motions for Sanctions, undated ("Def.'s Opp. to Second Mot. for Sanctions"), (Docket Item 144), 22-23).  However, even if I were to assume this, her request is without merit.  Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to

satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." The standard applicable to such reimbursement is the same standard that is used to determine whether sanctions should be awarded pursuant to the Court's inherent power. See Revson v. Cinque & Cinque, P.C., supra, 221 F.3d at 79; Oliveri v. Thompson, supra, 803 F.2d at 1277. While Peters contends that Carling brought this motion for sanctions as part of a "money-making operation" and in an effort to "extort"/"bribe" her (see Def.'s Opp. at 1-2), it is clear that the parties continue to squabble over collateral issues that do not go to the merits of the underlying dispute and do not justify the imposition of sanctions or the reimbursement of costs. There is nothing novel, unreasonable or vexatious about a plaintiff pursuing his case and attempting to recover the greatest amount of damages possible.

Peters has also asked for reimbursement of costs in the amount of $20,000.00 for responding to this motion and reimbursement of costs in the amount of $15,500.00 for responding to Carling's second motion for sanctions. Peters contends that in responding to each of Carling's motions, she lost one full week of billable work (see Def.'s Opp. at 25; Def.'s Opp. to Second Mot. for Sanctions at 22-23). Peters, a solo practitioner, does not identify the billable work she claims to have lost, nor does

she explain why she could not have turned to the billable work after she responded to Carling's motion.

What Peters is actually seeking to recover here are what are, constructively, her attorney's fees.  However, a <u>pro</u> <u>se</u> litigant, such as Peters, cannot recover attorney's fees, even if the litigant is an attorney.  <u>See</u> <u>generally</u> <u>United States Dep't of Justice, Tax Div. v. Hudson</u>, 626 F.3d 38 (2d Cir. 2010) (collecting cases).

Moreover, the sum sought be Peters is clearly grossly exaggerated.  Peters' opposition to both motions is comprised of virtually identical text, with the exception of certain portions of the argument section which address the different factual allegations at issue in the respective motions.  Thus, even if Peters was entitled to reimbursement of costs, it would be nowhere near the amount of $35,500.00.

IV. <u>Conclusion</u>

For the foregoing reasons, Carling's motion is denied, and Peters' request for reimbursement of costs is also denied.

Dated: New York, New York
       March 30, 2012

                                        SO ORDERED

                                        _____
                                        HENRY PITMAN
                                        United States Magistrate Judge

Copies transmitted to:

Francis Carling, Esq.
Suite 12BC
174 East 74th Street
New York, New York  10021

Kristan Peters, Esq.
Peters Hamlin LLC
Second Floor
1100 Summers Street
Stamford, Connecticut  06905