```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

FRANCIS CARLING,                  :

                  Plaintiff,      :   10 Civ. 4573 (PAE)(HBP)

    -against-                     :   OPINION
                                      AND ORDER
KRISTAN PETERS,                   :

                  Defendant.      :

----------------------------------X
```

PITMAN, United States Magistrate Judge:

I. Introduction

By notice of motion dated January 27, 2011 (Docket Item 106), plaintiff Francis Carling moves pursuant to Rule 11(b) and (c) of the Federal Rules of Civil Procedure, Rule 1.5 of the Local Rules of the Southern District of New York and the inherent powers of the Court to recover sanctions in an unspecified amount against defendant Kristan Peters. Peters opposes the motion, and, pursuant to 28 U.S.C. § 1927, seeks reimbursement of costs in the amount of $15,500.00 for having to respond to the motion.

For the reasons set forth below, Carling's motion is granted in part and denied in part, and Peters' request for reimbursement of costs is also denied.

II.  <u>Facts</u>

      Carling's motion "addresses defendant's misconduct in securing a last-minute modification of an [o]rder of the Court fixing the place of plaintiff's deposition, and other misconduct in connection with the parties' depositions conducted on December 16 and 17, 2010" (Plaintiff's Brief in Support of his Second Moton [<u>sic</u>] for Sanctions, dated Jan. 27, 2011 ("Pl.'s Brf."), (Docket Item 107), 1). Carling seeks the following sanctions: (1) a finding that Peters engaged in professional misconduct and made false and misleading statements to the court, or, in the alternative, a hearing on these allegations, (2) reimbursement of costs for travel to Stamford, Connecticut for Carling's deposition, (3) a referral of this matter to the Committee on Grievances of the Southern District of New York and (4) other relief, including a monetary sanction payable to Carling (<u>see</u> Docket Item 106; Pl.'s Brf. at 1).

      The conduct at issue in this motion is set forth below.[1]

---

[1] I do not address Carling's allegations concerning Peters' efforts to depose Ernest Collazo, Esq. (<u>see</u> Pl.'s Brf. at 9), Carling's former law partner, because those issues were resolved by my Order dated February 8, 2011 (<u>see</u> Docket Item 133).

A.  <u>Location of Carling's Deposition</u>

Carling was deposed on December 17, 2010 at Peters' Stamford, Connecticut office (<u>see</u> Pl.'s Brf. at 5-7).  Initially, the Notice of Deposition fixed the location of the deposition as Peters' New York, New York office (Pl.'s Brf. at 2).  I also issued an Order dated November 22, 2010, which directed, in part, that Carling appear for his deposition at Peters' New York office (Docket Item 68).  On December 15, 2010, however, Peters wrote to the Court and requested that the location of the deposition be changed to her Stamford, Connecticut office (Pl.'s Brf. at 2).  I granted Peters' application.

Carling contends that Peters' December 15, 2010 letter (as well as her representations to the Court the following day during a conference call) contained a misleading statement, as well as misrepresentations of fact concerning whether her New York office was an adequate location for Carling's deposition (Pl.'s Brf. at 2-3).  Carling contends that the following statement by Peters was misleading:  "The Court ordered that [Carling's] deposition take place in my New York office, in response to my request to take the deposition at the court house" (Pl.'s Brf. at 2).  Carling contends that this statement was misleading because it implies that the Court selected Peters' New York

3

office as the location for the deposition, when, in fact, Peters had chosen that location in the Notice of Deposition (Pl.'s Brf. at 2).  With respect to the misrepresentations of fact, Carling states that "defendant deliberately misled the Court as to the facilities at her New York office [i.e., by stating that they were inadequate] . . . solely . . . . to inconvenience plaintiff by making him travel to Stamford on short notice" because Peters' New York office was, in fact, an adequate location to take Carling's deposition (Pl.'s Brf. at 10-11).

     Peters responds that the Court was aware that the Notice of Deposition fixed the location of Carling's deposition as her New York office because Carling advised me of this fact. Peters also states that her lease with the building in which her New York office is located does not entitle her to the use of a conference room adequate for a deposition (Defendant's Opposition to Carling's Second Motions for Sanctions, undated ("Def.'s Opp."), (Docket Item 144), 14-16).  Finally, Peters contends that it was not burdensome for Carling to travel to Stamford, Connecticut for his deposition (Def.'s Opp. at 16-17).

4

B.   <u>Peters' Deposition</u>

Carling contends that Peters engaged in the following improper conduct during her deposition:  (1) she was approximately forty-five minutes late, (2) she ate a banana during questioning, (3) she took a lunch break, but brought back a salad and ate it during questioning, (4) she ended the deposition during questioning, stating that "she had a right to leave because she had been deposed for seven hours" and that "the Court had specifically ordered plaintiff to complete the deposition in seven hours," (5) in calculating seven hours for the deposition, she subtracted only the lunch break, but not any other breaks taken throughout the day and (6) "without notice to plaintiff, [she] made an arrangement with the court reporter to have a copy of the transcript sent directly to her, at plaintiff's expense" (Pl.'s Brf. at 3-5).

Peters responds that she informed Carling that she was going to be late for the deposition because of train delays, that neither being late nor eating a banana interrupted the deposition, that leaving the deposition after seven hours was consistent with the Federal Rules of Civil Procedure/at the Court's direction and that she asked for a copy of the deposition transcript in Carling's presence (Def.'s Opp. at 18-20).

5

    C.    <u>Carling's Deposition</u>

Carling contends that Peters engaged in the following improper conduct during his deposition:  (1) the deposition began approximately fifteen minutes late due to her delay, (2) the Stamford, Connecticut office was a "far from ideal" location for a deposition because it was a reception room with a small table, (3) she did not provide Carling with copies of a number of documents that were marked as exhibits during the deposition for his use, and, further, he received copies by mail approximately a month later, (4) in calculating seven hours for the deposition, she subtracted all of the breaks taken throughout the day -- in contrast to the manner in which she calculated seven hours for her deposition, (5) she did not provide Carling with a copy of his deposition transcript, "tak[ing] the position that plaintiff waived his Rule 30 right to correct the transcript [] because he did not make his request [for the transcript] on the record during the deposition itself, but only at the end when the parties were off the record" and (6) because she did not provide Carling with a copy of his deposition transcript, he was unable to offer his testimony as evidence at an arbitration session conducted on January 24, 2011 (Pl.'s Brf. 5-8).

Peters responds that she promptly began Carling's deposition, that Carling looked at "each original exhibit" while he testified, that she tried to accommodate his request for copies of the exhibits at the conclusion of the deposition but he declined to wait for the copies to be made and that she was under no obligation to provide Carling with a copy of his deposition transcript (Def.'s Opp. at 20-21).

III. <u>Analysis</u>

As noted above, Carling moves for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, Rule 1.5 of the Local Civil Rules for the Southern District of New York and the inherent powers of the Court.[2]  Peters, who, like Carling is proceeding <u>pro se</u>, seeks reimbursement of costs incurred in responding to this motion pursuant to Section 1927.

Rule 11(c) permits a Court to impose sanctions for violations of Rule 11(b).  Fed.R.Civ.P. 11(c)(1); <u>Perez v. Posse Comitatus</u>, 373 F.3d 321, 325 (2d Cir. 2004); <u>Murawski v. Pataki</u>,

---

[2] Carling also raises arguments that (1) Peters should be held to a higher standard of professional conduct as a result of her prior discipline in this Court and (2) notwithstanding her <u>pro se</u> status, Peters should be held to at least the same standard of professional conduct as any lawyer practicing before this Court (<u>see</u> Pl.'s Brf. at 11-14).  Neither of these arguments, however, identify a legal basis for the imposition of sanctions against a party.

7

514 F. Supp. 2d 577, 590 (S.D.N.Y. 2007) (Holwell, J.) ("[T]he decision to impose Rule 11 sanctions rests in the sound discretion of the court."). Rule 11(b) is violated when an attorney submits a pleading, motion or other paper for an improper purpose, or knowingly presents a frivolous claim or legal argument. Ball v. A.O. Smith Corp., 451 F.3d 66, 70 (2d Cir. 2006). An oral representation violates Rule 11 when: "(1) it [] violate[s] the certification requirement of Rule 11(b), e.g., by advocating baseless allegations, and (2) it [] relate[s] directly to a matter addressed in the underlying paper and [is] in furtherance of that matter to constitute advocating within the meaning of subsection (b)." O'Brien v. Alexander, 101 F.3d 1479, 1489-90 (2d Cir. 1996).

Rule 11 is inapplicable, however, to the conduct for which Carling seeks sanctions because it relates to issues concerning depositions taken during the course of discovery. See Fed.R.Civ.P. 11(d) ("[Rule 11] does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37."); see also Miranda v. Haywood, No. 09-CV-1328 (ENV)(CLP), 2010 WL 572587 at *2 (E.D.N.Y. Feb. 11, 2010) ("Rule 11 explicitly states that it does not relate to sanctions for conduct during discovery."); Gortat v. Vapala Bros., Inc., No. 07-CV-3629 (ILG), 2008 WL 5273960 at *3 (E.D.N.Y. Dec. 18,

8

2008) (same); Avent v. Solfaro, 223 F.R.D. 184, 187-88 (S.D.N.Y. 2004) (Ellis, M.J.) (same); Baker v. Urban Outfitters, 254 F. Supp. 2d 346, 361 (S.D.N.Y. 2003) (Preska, D.J.) (same).  Here, all of the improper conduct asserted by Carling either (1) concerns a dispute concerning the location for Carling's deposition, (2) occurred during Carling's and Peters' depositions, or (3) was directed to an arbitrator, not the Court.  The only conduct directed to the Court was Peters' December 15, 2010 letter (and any representations made to the Court concerning this letter), which requested that the location of Carling's deposition be changed to her Stamford, Connecticut office.  Even if Rule 11 was applicable to this letter, the costs that Carling incurred in traveling to Stamford, Connecticut from New York City -- i.e., a $26.00 round trip peak ticket from Grand Central Terminal for an approximately forty-five minute train ride each way -- are de minimis and he is not entitled to reimbursement.

Next, Local Civil Rule 1.5(f) provides that, "Individual District Judges and Magistrate Judges may . . . refer any matter to the Chief Judge for referral to the Committee on Grievances to consider the imposition of discipline or other relief pursuant to this rule."  However, the grounds for disci-

pline listed in Local Civil Rule 1.5(b)(1)-(6)[3] clearly do not apply here. While the conduct at issue -- i.e., arriving to a deposition late, eating during a deposition, not providing copies of exhibits used during a deposition to the person being deposed and so forth -- may be discourteous and constitute unprofessional conduct, it does not rise to the level of seriousness that is contemplated by Local Civil Rule 1.5.

Finally, courts may punish improper conduct pursuant to an inherent power that stems from the courts' need "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). "One component . . . is the power to assess costs and attorney's fees against either the client or his attorney where a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" United States v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers of Am., AFL-CIO, 948 F.2d 1338, 1345 (2d Cir. 1991), quoting F.D. Rich Co. v. United States ex

---

[3] Local Civil Rule 1.5(b)(1)-(6) provides that members of the bar of this Court may be disciplined for the following reasons: (1) conviction of a felony or misdemeanor; (2) disciplinary sanctions imposed by a state or federal court; (3) resignation from the bar of a state or federal court while misconduct allegations are pending; (4) an infirmity which prevents the attorney from practicing law; (5) violation of the New York State Rules of Professional Conduct in connection with activities in this Court and (6) practicing before the Court without having been admitted.

rel. Indus. Lumber Co., 417 U.S. 116, 129 (1974). In order to impose sanctions against counsel under this power, the court must find, with a "high degree of specificity," that the circumstances of their conduct constitute clear evidence that their claims were instituted and/or continued in bad faith. Oliveri v. Thompson, 803 F.2d 1265, 1277 (2d Cir. 1987), quoting Dow Chem. Pac., Ltd. v. Rascator Mar. S.A., 782 F.2d 329, 344 (2d Cir. 1986). Bad faith may be found where the conduct at issue is "entirely without color" and was taken "for reasons of harassment or delay or for other improper purposes." Oliveri v. Thompson, supra, 803 F.2d at 1272. In short, the court must find "clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 79 (2d Cir. 2000), quoting Agee v. Paramount Commc'n, Inc., 114 F.3d 395, 398 (2d Cir. 1997).

   The conduct asserted in both Carling's motion and Peters' opposition papers demonstrates that the parties continue to squabble over minor, collateral issues that do not go to the merits of the underlying dispute. For example, Carling makes much of the fact that Peters concluded her deposition during a line of questioning simply because seven hours had elapsed. Carling does not, however, identify any questions that he was not able to ask or subject matters that he was unable to explore.

11

Carling also asserts that (1) Peters did not provide him with a free copy of his deposition transcript, although she arranged for a copy of her deposition transcript at his expense and (2) as a result, he was unable to offer portions of his deposition testimony as evidence during an arbitration session conducted in late January 2011.  While it is the customary practice in this District for the parties to either (1) enter into a reciprocal agreement under which each side provides the other with free copies of deposition transcripts or (2) agree that each side will buy its own copies of deposition transcripts, neither side has a right to receive a copy of any deposition transcript free of charge.  See ACLI Gov't Sec., Inc. v. Rhoades, 81 Civ. 2555 (MEL), 1991 WL 270450 at *2 (S.D.N.Y. Dec. 5, 1991) ("Although the norm is that the party that instigates and conducts a deposition pays the transcription costs and provides a free copy to a third party deponent, that practice is not mandated in all cases. Rule 30 . . . does not specify who is responsible for the costs of providing deposition transcripts.") (Lasker, D.J.); see also Bogan v. Northwestern Mut. Life Ins. Co., 152 F.R.D. 9, 11 (S.D.N.Y. 1993) (Broderick, D.J.).  Additionally, the arbitration session that Carling refers to occurred approximately a month after his deposition.  Carling could have either obtained a copy of his deposition transcript himself or submitted an affidavit to

the arbitrator setting forth the pertinent testimony that he sought to offer.

The remainder of the conduct at issue is similarly insignificant, collateral and does not give rise to sanctions pursuant to the Court's inherent power. Carling should, however, be reimbursed for the cost of Peters' deposition transcript. It is clear that the parties did not reach any type of agreement concerning the cost of copies of deposition transcripts in this case, and, accordingly, each party is responsible for their own transcript costs.

Peters' request pursuant to Section 1927 for reimbursement of costs incurred in responding to this motion is also denied. Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." The standard applicable to such reimbursement is the same standard that is used to determine whether sanctions should be awarded pursuant to the court's inherent power. See Revson v. Cinque & Cinque, P.C., supra, 221 F.3d at 79; Oliveri v. Thompson, supra, 803 F.2d at 1277. While Peters contends that Carling brought this motion for sanctions as part of a "money-making operation" and in an effort to "ex-

13

tort"/"bribe" her (see Def.'s Opp. at 2-3), as already explained above, the parties continue to squabble over insignificant and collateral matters.  The parties would be far better served by focusing their efforts on the merits of the underlying dispute.

Peters has also asked for reimbursement of costs in the amount of $15,500.00 for responding to this motion and reimbursement of costs in the amount of $20,000.00 for responding to Carling's first motion for sanctions.  Peters contends that in responding to each of Carling's motions, she lost one full week of billable work (see Def.'s Opp. at 22-23; Opposition to Carling's First Motion for Sanctions, undated ("Def.'s Opp. to First Mot. for Sanctions"), (Docket Item 142), 25).  Peters, a solo practitioner, does not identify the billable work she claims to have lost, nor does she explain why she could not have turned to the billable work after she responded to Carling's motion.

What Peters is actually seeking to recover here are what are, constructively, her attorney's fees.  However, a pro se litigant, such as Peters, cannot recover attorney's fees, even if the litigant is an attorney.  See generally United States Dep't of Justice, Tax Div. v. Hudson, 626 F.3d 38 (2d Cir. 2010) (collecting cases).

Moreover, the sum sought be Peters is clearly grossly exaggerated.  Peters' opposition to both motions is comprised of

14

virtually identical text, with the exception of certain portions of the argument section which address the different factual allegations at issue in the respective motions. Thus, even if Peters was entitled to reimbursement of costs, it would be nowhere near the amount of $35,500.00.

IV. Conclusion

For the foregoing reasons, Carling's motion is granted to the extent that he seeks reimbursement for the cost of Peters' deposition transcript, and Peters' request for reimbursement of costs is also denied. Carling is directed to provide Peters with the billing invoices and/or receipts that set forth the cost of her deposition transcript.

Dated:   New York, New York
         March 30, 2012

SO ORDERED

_____
HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

Francis Carling, Esq.
Suite 12BC
174 East 74th Street
New York, New York  10021

Kristan Peters, Esq.
Peters Hamlin LLC
Second Floor
1100 Summers Street
Stamford, Connecticut  06905