UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
FRANCIS CARLING,                                   :          10 Civ. 4573 (PAE) (HBP)
                                                   :
                              Plaintiff,           :          <u>OPINION & ORDER</u>
            -v-                                    :
                                                   :
                                                   :
KRISTAN PETERS,                                    :
                                                   :
                              Defendant.           :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

  Pending before the Court is the February 6, 2013 Report and Recommendation of the Honorable Henry Pitman, United States Magistrate Judge (the "Report"). Judge Pitman recommends that the Court dismiss plaintiff Francis Carling's Second Amended Complaint for lack of subject matter jurisdiction. For the reasons that follow, the Court adopts the Report in full.

**I. Background**

  The Report well summarizes the long history of this litigation between two attorneys proceeding *pro se*. The central issue presented here is whether Carling has satisfied the amount-in-controversy requirement for diversity jurisdiction.

  In brief: On June 11, 2010, Carling filed his initial Complaint against defendant Kristan Peters. Dkt. 1 ("Compl."). Carling claimed that Peters had failed to pay him for legal services he had provided to her. Carling brought claims of fraud, breach of contract, *quantum meruit*, negligence *per se*, defamation *per se*, and breach of the covenant of good faith and fair dealing. The Complaint sought $150,000 in compensatory damages, plus punitive damages, on his fraud

claim; a total of $50,700 in compensatory damages, plus punitive damages, on his two contract claims; the fair value of his services on the *quantum meruit* claim; and "compensatory and punitive damages as may be found at trial" on the remaining claims. *See* Compl. ¶¶ 1, 25.

On July 20, 2010, Carling filed a First Amended Complaint. Dkt. 5 ("FAC"). Although his factual allegations were substantially unchanged, Carling dropped one of his two breach of contract claims, on which he had sought $38,850. *See* Compl. ¶¶ 80–84. Thus, the damages Carling specified in the FAC's fraud and contract claims were a combined $161,850. *See* FAC 25. Carling's other claims, on which he did not specify an amount of damages, remained intact.

On May 25, 2012, a conference was held before Judge Pitman. This Court has reviewed the audiotape of that conference. Judge Pitman expressed skepticism that the dispute between the parties entailed more than $75,000. Colloquy ensued as to whether there was a viable basis for Carling's prayer for damages exceeding $75,000. Carling explained that it was his claim for punitive damages and/or Peters's counterclaims that caused the overall damages to exceed $75,000.

On May 30, 2012, Judge Pitman issued an order that stated:

> Because there is serious doubt as to whether there is any claim in the case that would support an award of damages in excess of $75,000, plaintiff is directed to show cause, in writing, no later than June 8, 2012 why the action should not be dismissed for lack of subject matter jurisdiction.

Dkt. 213. The order also granted Carling's motion for leave to amend the complaint again.

In response, on May 31, 2012, Carling filed the Second Amended Complaint ("SAC"), Dkt. 214, which is operative here. The SAC contains two claims—for fraud and breach of contract—and drops all others. In the fraud claim, which arises out of Carling's contract to represent Peters as a lawyer, Carling alleges that he relied to his detriment on misrepresentations Peters made to him while he served as her attorney. SAC ¶¶ 93–102. On that claim, Carling

seeks $41,750 in compensatory damages.  In the contract claim, Carling alleges that Peters failed to pay him for legal services rendered, and thereby breached her duties of good faith and fair dealing.  SAC ¶¶ 103–117.  On that claim, Carling seeks $11,850 in compensatory damages.  Carling also seeks unspecified punitive damages on both claims.

Judge Pitman properly concluded that the compensatory damages sought in the fraud claim encompass, or duplicate, the $11,850 in compensatory damages sought in the contract claim.  *See* Report 18.  That proposition does not appear to be disputed.  Thus, Carling's total request for compensatory damages is approximately $41,750.  That figure is below the amount in controversy required (more than $75,000) to support diversity jurisdiction.  *See* 28 U.S.C. § 1332(a).

On June 8, 2012, Carling filed a motion for summary judgment.  Dkt. 215–220.  In that motion, Carling argues that the SAC satisfies the amount in controversy requirement because the SAC sought, in addition to compensatory damages, punitive damages on both claims.  Dkt. 216, at 5, 7–18; SAC ¶¶ 102, 116–117.  On June 20, 2012, Peters moved to dismiss the SAC, including on grounds that diversity jurisdiction was lacking.  Dkt. 225–226.

On February 6, 2012, Judge Pitman issued the Report.  Dkt. 239.  It recommends that the Court dismiss the SAC for lack of subject matter jurisdiction, because the amount in controversy does not exceed $75,000.

On February 18, 2013, Carling filed timely objections to the Report.  Dkt. 240.

II. **Discussion**

   A. **Standard of Review**

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28

U.S.C. § 636(b)(1)(C).  To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record."  *Carlson v. Dep't of Justice*, No. 10 Civ. 5149 (PAE)(KNF), 2012 WL 928124, at *1 (S.D.N.Y. Mar. 19, 2012) (citation omitted); *see also Wilds v. United Parcel Serv.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

Where specific objections are made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).  To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error.  *See Jones v. Smith*, No. 09 Civ. 6497 (PAE)(GAY), 2012 WL 1592190, at *1 (S.D.N.Y. May 7, 2012) (collecting cases).  The Court is mindful that "*pro se* parties are generally accorded leniency when making objections."  *Pinkney v. Progressive Home Health Servs.*, No. 06 Civ. 5023 (LTS)(JCF), 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008) (citing *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002)).  Nonetheless, to trigger *de novo* review, even a *pro se* party's objections to a Report and Recommendation must be "specific and clearly aimed at particular findings" in the magistrate judge's report.  *Parlin Funds LLC v. Gilliams*, No. 11 Civ. 2534 (ALC)(MHD), 2012 WL 5258984, at *1 (S.D.N.Y. Oct. 23, 2012) (quoting *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)).  Moreover, where, as here, the *pro se* litigant is a lawyer, the Court may accord less leniency.  *See Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("The ultimate extension of this reasoning is that a lawyer representing himself ordinarily receives no such solicitude at all."); *Blasi v. N.Y.C. Bd. of Educ.*, No. 00-CV-5320, 2012 WL 3307346, at *1 n.3 (E.D.N.Y. Aug. 12, 2012) ("Where the *pro se* litigant is a lawyer, however, courts may partially or fully withdraw his

special status if his legal training and experience suggest that he is unlikely to inadvertently forfeit important rights.").

### B. Applicable Legal Standards

Federal courts have an independent obligation to ascertain their own jurisdiction. *Hird v. iMERGENT Inc.*, No. 10 Civ. 166 (DLC), 2010 WL 3398472 (S.D.N.Y. Aug. 26, 2010) (quoting *Local 377, RWDSU, UFCW v. 1864 Tenants Ass'n*, 533 F.3d 98, 99 (2d Cir. 2008)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

"The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. After construing all ambiguities and drawing all inferences in a plaintiff's favor, a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citations omitted).

Here, the sole question relating to whether diversity jurisdiction exists under 28 U.S.C. § 1332(a) is whether "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."[1] Judge Pitman accurately set out the legal standards applicable to that issue, *see* Report § III(A), and the Court adopts Judge Pitman's discussion of those standards.

Based on the Court's review of the record, including Carling's objections to the Report, three distinct issues are presented as to the amount in controversy requirement: (1) whether the SAC, which seeks only $41,750 in compensatory damages, is the decisive pleading, or whether the initial Complaint, which stated that it was seeking $200,700 in compensatory damages, controls; (2) assuming that the SAC controls, whether Carling's prayer in the SAC for punitive

---

[1] The requirement of diverse citizenship is met, because Carling is a citizen of New York, SAC ¶ 2, and Peters is a citizen of Connecticut, *id.* ¶ 3.

5

damages is viable, so as to increase the amount in controversy; and (3) again assuming that the SAC controls, whether Peters' counterclaims are properly considered in determining the amount in controversy. The Court considers these questions in turn.

### C. The Second Amended Complaint is the Operative Complaint

The Court agrees with Judge Pitman, *see* Report 13, that the SAC is the operative complaint for determining whether the amount-in-controversy requirement has been met.

It is black-letter law that "[s]atisfaction of the § 1332(a) diversity requirements (amount in controversy and citizenship) is determined as of the date that suit is filed—the 'time-of-filing' rule." *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999); *see also Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) ("The amount in controversy is determined at the time the action is commenced."). In other words, "post-filing event[s]" do not affect the calculation of the amount in controversy, which "is established as of the date of *the complaint* and is not reevaluated based on post-filing events." *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 506 (2d Cir. 2005) (emphasis added); *see also Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961) ("The general federal rule has long been to decide what the amount in controversy is from *the complaint itself*, unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith.'" (emphasis added)).

The issue presented here is, as between Carling's original and amended complaints, which is operative in determining the amount in controversy. Relevant to this issue, the Second Circuit has recognized "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Wolde-Meskel*, 166 F.3d at 63. It is well-settled that "the sum claimed by the plaintiff controls if the claim is apparently made in *good*

*faith*. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938). "[T]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank and Trust Co. of Chi.*, 93 F.3d 1064, 1070–71 (2d Cir. 1996) (quoting *Tongkook*, 14 F.3d at 785).

In the context of cases, like this, that were filed in the first instance in federal court, the Court is entitled to look beyond the face of the complaint in determining whether its allegations were made in good faith:

> [A plaintiff's] good faith in choosing the federal forum is open to challenge not only by resort to the face of his complaint, but by the facts disclosed at trial, and if from either source it is clear that his claim never could have amounted to the sum necessary to give jurisdiction there is no injustice in dismissing the suit.

*St. Paul Mercury*, 303 U.S. at 290.[2] The Court may also consider information gleaned from discovery to the extent it bears on the plaintiff's good faith at the time of the initial filing. *See Tongkook*, 14 F.3d at 785 ("It is clear from the pre-trial record that Tongkook could not properly

---

[2] Such an inquiry is less merited where a defendant has removed a case originally filed in state court. That is because, in that context, there is no basis for concern that the plaintiff "claimed a large amount in order to confer jurisdiction on a federal court or that the parties have colluded to that end"; the law accordingly presumes that the plaintiff who initially filed in state court seeking more than $75,000 has not conjured that figure in bad faith. *St. Paul Mercury*, 303 U.S. at 290. By contrast, where, as here, the plaintiff has initially filed suit in federal court, it is sensible to inquire into whether a prayer for more than $75,000 was made in good faith. The Supreme Court has recognized that, in the removal context, there is a potential for a plaintiff to engage in a different type of unjustified manipulation: Following removal by a defendant, a plaintiff might amend his complaint, to attempt to defeat such removal, including by reducing the amount in controversy. *Id.* at 289–94. To prevent that from occurring, the Court has held that "[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." *Id.* at 293. *Cf. Knowles v. Standard Fire Ins. Co.*, No. 4:11-CV-04044, 2011 WL 6013024 (W.D. Ark. Dec. 2, 2011), *leave to appeal denied*, No. 11-8030, 2012 WL 3828891 (8th Cir. Jan. 4, 2012), *cert. granted*, 133 S. Ct. 90 (U.S. 2012) (granting cert on the question whether a class action plaintiff may defeat the defendant's right of removal by stipulating to damages below the threshold required by the Class Action Fairness Act).

7

claim the required statutory jurisdictional amount, and this was true when the action was commenced, although the fact was not uncovered until discovery began.").

Here, although Carling's initial Complaint contained a prayer for compensatory damages ($200,700) exceeding $75,000, his later actions demonstrate that his unexplained prayer for that amount of compensatory damages had no basis in fact. At the May 25, 2012 conference with Judge Pitman, Carling admitted that, only by taking into account either his prayer for punitive damages, or Peters's counterclaims, was the amount-in-controversy threshold met. Further, Carling's SAC, which he sought leave to file after Judge Pitman had raised questions about whether there was a good faith basis for Carling's damages claims, clarified the amount of compensatory damages sought on his fraud and contract claims, the only ones Carling chose to maintain. These claims together seek $41,750. Carling's SAC thus demonstrated the lack of good faith underlying his original prayer for damages. And it rendered it a "legal impossibility" that he could recover more than $75,000 in compensatory damages. *Accord Tongkook*, 14 F.3d at 785 ("[A] plaintiff is responsible for knowing if its claim is within the statutory jurisdictional amount."). As such, the SAC is the appropriate complaint to consider in determining the amount in controversy.[3]

---

[3] Where the diversity of citizenship is at stake, the inquiry is different: The point at which the requisite complete diversity must exist is the date the lawsuit is first filed in federal court. *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570–71 (2004) ("It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing—whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal."); *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) ("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."); *Trans Union LLC v. Lindor*, 393 F. App'x 786, 789 (2d Cir. 2010) ("Subject matter jurisdiction ordinarily must be established at the time an action is commenced."). This rule serves to protect the parties' right to a federal forum: Otherwise, a defendant could move or change its corporate headquarters so as to defeat a plaintiff's right to a federal forum. Here, it was *plaintiff*'s conduct,

In so holding, the Court recognizes that, where a court has dismissed claims brought in good faith and thereby left the case with an amount in controversy below the required threshold, diversity jurisdiction remains. *See, e.g., Wolde-Meskel*, 166 F.3d at 63 ("But while that ruling reduced the amount in controversy, it did not establish the quite distinct proposition that the amount claimed was never in controversy."). But this case presents a different context. Carling voluntarily amended his complaint to withdraw claims and reduce damages such that it is a "legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury*, 303 U.S. at 288–89; *see also Bernshteyn v. Feldman*, No. 04 Civ. 1774 (GEL), 2006 WL 2516514 (S.D.N.Y. Aug. 29, 2006) ("[W]hile a drop in the amount in controversy following the filing of the complaint does not deprive the Court of jurisdiction, the eventual discovery of a fact that establishes that the plaintiff could not meet the jurisdictional amount *at the time of filing* will defeat jurisdiction." (citing *Tongkook,* 14 F.3d at 785)).

For these reasons, courts in this District have commonly considered amended complaints in determining whether a plaintiff has alleged a sufficient amount in controversy. *See* Report 13 (collecting cases). The Second Circuit, too, has considered amended complaints in determining whether the amount in controversy has been satisfied. *See Chase Manhattan Bank*, 93 F.3d at 1071 ("Because the *amended complaint* satisfied the amount in controversy requirement . . . ." (emphasis added)). It is, finally, noteworthy that plaintiffs are commonly permitted to amend their complaints in order to properly assert jurisdiction. *See Jordan v. Verizon Corp.*, No. 08 Civ. 6414 (GEL), 2009 WL 1490813, at *1 (S.D.N.Y. May 27, 2009) ("The Court granted [defendant's] motion to dismiss for lack of subject matter jurisdiction, but allowed plaintiff to replead, carefully instructing plaintiff to provide sufficient jurisdictional allegations [as to

---

in reducing the amount in controversy so as tacitly to acknowledge the lack of a good-faith basis to seek compensatory damages exceeding $75,000, that defeats that right.

9

amount in controversy] . . . ."); *accord Schlesinger v. Councilman*, 420 U.S. 738, 745 n.9 (1975) ("Defective allegations of jurisdiction may be amended." (citing 28 U.S.C. § 1653)). By the same token, where a plaintiff eliminates claimed damages in a context that reveals the lack of a bona fide basis for having initially claimed damages of more than $75,000, it is appropriate to consider his later pleading as revealing the true amount in controversy.

### D. Punitive Damages Are Unavailable on Carling's Claims

Because Carling's claims for compensatory damages in the SAC are for $41,750, such damages cannot support federal jurisdiction. To fill this gap, Carling argued, both before Judge Pitman and in his objections to the Report, that his prayer for punitive damages is also properly considered.

In making this claim, Carling is not required to prove that the punitive damages sought would, if awarded, necessarily elevate his total damages over $75,000. Rather, he "has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount," *Tongkook*, 14 F.3d at 784, and "[w]here the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings." *Id.* at 785. But dismissal for lack of jurisdiction is required where, "under applicable law, the damages claimed are not recoverable, or when the damages claimed, even though recoverable, cannot as a matter of law exceed [the jurisdictional amount]." *Deutsch v. Hewes St. Realty Corp.*, 359 F.2d 96, 100 (2d Cir. 1966) (citations omitted).

The Court therefore must consider whether punitive damages are available to Carling under the two causes of action he pursues under New York law: for fraud and breach of

contract.[4]  "[I]f punitive damages are permitted under the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied." *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991).  However, the Second Circuit has cautioned, a district court, in determining whether claimed punitive damages count towards the jurisdictional threshold, must examine claims for punitive damages with closer scrutiny than claims for actual damages.  *See Nwanza v. Time, Inc.*, 125 F. App'x 346, 349 (2d Cir. 2005) (citing *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1034 n.1 (2d Cir.1972)).

Under both the fraud and contract claims, a decisive issue in considering whether punitive damages are available is whether Peters's conduct was directed at the public generally.  In the Report, Judge Pitman determined that, "to a legal certainty," punitive damages were not available in this case, because Carling, in alleging fraud and breach of contract, has not alleged any harm to the public.  Report 19.  In objecting to the Report, Carling cites to cases holding that wrongdoing need not be directed against the public generally.  *See* Objections 7–8.  Those cases, however, do not carry the day, in light of subsequent and on-point decisions from the New York Court of Appeals and the Second Circuit.

### 1.  Carling's Breach of Contract Claim

In 1994, the New York Court of Appeals held that, under New York law, "[p]unitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights." *Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603, 613 (1994).  However, *Rocanova* held, punitive damages are recoverable "when the breach also involved a particularly egregious fraud that 'was aimed at the

---

[4] Both parties rely on New York law and do not suggest that the law of any other jurisdiction applies.  "[S]uch 'implied consent . . . is sufficient to establish choice of law.'" *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004) (quoting *Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (second alteration in original)).

11

public generally.'" *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 94 (2d Cir. 2005) (quoting *Rocanova*, 83 N.Y.2d at 613). The following year, the New York Court of Appeals "made it even more clear that punitive damages were recoverable in a contract action only 'if necessary to vindicate a public right.'" *TVT Records*, 412 F.3d at 94 (quoting *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 315 (1995)); *see id.* at 94 n.12 ("[T]his Court has not wavered in applying the public aim requirement since *Rocanova* was issued.").

In his contract claim, Carling has not alleged—in any of the three Complaints he has filed—that Peters's conduct was egregious or that it was aimed against the public generally. Indeed, the facts alleged make clear that Peters aimed her allegedly breaching conduct solely at Carling.

In his objections, Carling argues that he relied in good faith on Second Circuit case law that had held that punitive damages could be imposed based on "recklessness or willfulness, whether or not directed against the public generally." Objections 7–8 (quoting *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 409 (2d Cir. 1991)); *see also* Report 24 n.5 (collecting cases). But that law is out of date, and was out of date long before 2010, when Carling filed his initial Complaint. The New York Court of Appeals' decisions in 1994, in *Rocanova*, and in 1995, in *New York University*, and the Second Circuit's clear synopses of this doctrine in *TVT Records* in 2005, control here. Indeed, in *TVT Records*, the Second Circuit expressly rejected a district court's attempt to fashion an exception to the requirement that the defendant's conduct be part of a pattern of conduct directed at the public generally. The Second Circuit noted that the rule clearly requiring that a contract breach be directed at the public generally for punitive damages to be available "has not been changed by the Court of Appeals, and we have no reason to question its continued vitality." *TVT Records*, 412 F.3d at 94. Carling has not pointed to any

12

later contrary authority from either the Second Circuit or the New York Court of Appeals. The Court accordingly concludes, to a legal certainty, that Carling cannot recover punitive damages on his contract claim.

### 2. Carling's Fraud Claim

Because the fraud in which Carling has alleged Peters engaged arose out of a contractual relationship, the same requirement applies for punitive damages to be available: The fraudulent conduct must have been directed at the public generally. Under New York law, "[w]here, as here, an action for punitive damages 'has its genesis in the contractual relationship between the parties,' a party seeking punitive damages must satisfy four elements: '(1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of [a sufficiently] egregious nature . . .; (3) the egregious conduct must be directed to plaintiff; and (4) *it must be part of a pattern directed at the public generally*.'" *Ball v. Cook*, No. 11 Civ. 5926 (RJS), 2012 WL 4841735, at *11 (S.D.N.Y. Oct. 9, 2012) (quoting *N.Y. Univ.*, 87 N.Y.2d at 316) (emphasis added) (omission in original). As the Second Circuit has explained, there is a critical difference between fraud claims that arise out of a contract and those that do not. *See Macquesten Gen. Contracting, Inc. v. HCE, Inc.*, 128 F. App'x 782, 786 (2d Cir. 2005) ("[T]he public-aim requirement has generally been applied to breach of contract claims and fraud claims arising out of contract; it generally has not been applied to claims that, while related to a contract dispute, do not arise out of the contract itself.").

In light of this authority, district courts have consistently held that punitive damages are unavailable where a fraud claim is contract-based and does not seek to vindicate interests outside the relationship between the plaintiff and defendant. *See, e.g.*, *Leviton Mfg. Co., Inc. v. Reeve*, No. 11-CV-6238 ADS ARL, 2013 WL 504020, at *22 (E.D.N.Y. Feb. 7, 2013) ("[W]here the

parties are in a contractual relationship, courts have only allowed punitive damages for fraud where the additional damages are 'necessary to vindicate a public right.'") (quoting *N.Y. Univ.*, 87 N.Y.2d at 315)); *Mayline Enters., Inc. v. Milea Truck Sales Corp.*, 641 F. Supp. 2d 304, 311 (S.D.N.Y. 2009) ("New York courts have refused to award punitive damages, where the plaintiff did not meet the 'public harm' requirement, no matter how improper the defendant's activity."); *see also United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 161 (2d Cir. 1996) (requiring "a pattern of conduct harming the general public" for punitive damages).

As in his contract claim, the cases cited by Carling in his objections are inapposite in light of this intervening, controlling case law. The Court therefore concludes, to a legal certainty, that Carling cannot recover punitive damages on his fraud claim.

### E. Counterclaims

Carling's final argument is that the jurisdictional amount in controversy requirement may be satisfied by taking into account Peters's compulsory counterclaims. These undisputedly seek damages in excess of $75,000. *See* Dkt. 45; Objections 13 n.4.[5] Peters has stated that, in the event Carling's claims are dismissed, she will not proceed with her counterclaims. *See* Report 26; Dkt. 228 (Peters's Summary Judgment Br.), at 4.

As the Report recognizes, "[n]either the Supreme Court nor the Court of Appeals for the Second Circuit has ruled on whether a compulsory counterclaim brought in diversity jurisdiction case originally commenced in federal court should be considered in determining whether the

---

[5] Peters asserts counterclaims for extortion, fraud, breach of contract, fraudulent inducement, misrepresentation, negligent inducement, fraudulent misrepresentation, negligence per se, breach of the duty of good faith and fair dealing, attempted extortion, and tortious interference with business relations. Dkt. 45 ¶¶ 30–82. These counterclaims are compulsory because they all arise out of the attorney-client relationship between Carling and Peters that is the subject of Carling's claims. See Fed. R. Civ. P. 13(a)(1).

14

amount of controversy has been satisfied." Report 26; *see Kaplan v. Computer Scis. Corp.*, 148 F. Supp. 2d 318, 319–20 (S.D.N.Y. 2011) ("[C]ourts are divided on the issue of whether a compulsory counterclaim may be considered in determining the amount of controversy for purposes of exercising diversity jurisdiction."). Carling urges the Court to follow the approach taken by the Third Circuit, which has held that the assertion of counterclaims that raise the amount in dispute above $75,000 will confer subject matter jurisdiction, even if the plaintiff has failed to raise claims in the requisite amount. *Spectator Mgmt. Grp. v. Brown*, 131 F.3d 120, 121 (3d Cir. 1997).

The Court disagrees. Although the Second Circuit has not addressed this precise issue, it has articulated a general rule that "the amount in controversy is calculated from the plaintiff's standpoint." *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006) (quoting *Kheel v. Port of N.Y. Auth.*, 457 F.2d 46, 49 (2d Cir. 1972)); *see also Leyse v. Domino's Pizza LLC*, No. 04 Civ. 2411 (HB), 2004 WL 1900328, at *3 (S.D.N.Y. Aug. 24, 2004) ("'The Second Circuit has held that the amount in controversy for jurisdictional purposes should be measured strictly from the plaintiff's perspective, without regard to the amount at stake for any other party.'" (quoting 15 Moore's Federal Practice—Civil § 102.109[3])). That rule dictates excluding the value of a defendant's counterclaims. Notably, consistent with that rule, courts in this Circuit have reached a consensus that, in the *removal* context, compulsory counterclaims may not be used to satisfy the amount in controversy requirement. *See Brown & Michaels PC v. Cardoso*, No. 5:05CV209 (FJS/GJD), 2005 WL 1528748, at *2 (N.D.N.Y. June 27, 2005) (collecting cases in removal context). If a defendant cannot propel a case into federal court on the basis of her compulsory counterclaims, it logically follows that a plaintiff, who has initiated the lawsuit, cannot, either.

In addition, this approach makes sense by analogy to the "well-pleaded complaint" rule:

> This rule states that a plaintiff cannot create federal jurisdiction by anticipating defendant's defenses and must instead reveal jurisdictional grounds in the complaint. By analogy, whether a court may properly remand a case depends upon the contents of the complaint as drawn by plaintiff unaided by the answer or petition for removal.

*Video Connection of Am., Inc. v. Priority Concepts, Inc.*, 625 F. Supp. 1549, 1551 (S.D.N.Y. 1986) (citations omitted).

### F. Judicial Efficiency

Carling, finally, argues that the Court should decline to dismiss, because dismissal would be inefficient and unfair. *See* Objections 5 (dismissing for lack of jurisdiction would be "waste of judicial resources and unfair to the parties"). The Court, however, has an independent and ongoing duty to determine its own subject matter jurisdiction, and if jurisdiction is wanting, dismissal is mandatory. *See Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt."); Fed. R. Civ. P. 12(h)(3) ("If the court determines *at any time* that it lacks subject-matter jurisdiction, the court must dismiss the action." (emphasis added)).

For the reasons set out above, Carling seeks damages in the amount of only $41,750, and there is no basis for adding to that figure, whether based on his initial Complaint, his prayer for punitive damages, or Peters's counterclaims. Because the Court concludes "to a legal certainty" that "from the outset," Carling could not make out the jurisdictional amount in controversy, this case must be dismissed. *Tongkook*, 14 F.3d at 785.

### III. Motion for Sanctions

Carling's third motion for sanctions is also pending. Dkt. 222–224. Carling claims that Peters lied and made misrepresentations to the Court in opposing Carling's second motion for

16

sanctions. Specifically, Carling alleges that Peters misled the Court about whether she (1) had an office in New York; (2) was able to use a conference room in that office building for Carling's deposition; and (3) submitted a misleading affidavit to the Court in opposition to the second motion for sanctions. Carling asks the Court, using its inherent powers, to impose monetary sanctions, and further asks the Court to: (1) reprimand Peters for violating the New York Rules of Professional Conduct; (2) refer Peters to the District's Committee on Grievances; and (3) order Peters to reimburse Carling for the costs of a non-party deposition he took to establish the facts of her misconduct. Judge Pitman stayed Peters's obligation to respond to the sanctions motion while he considered the issue of subject matter jurisdiction.

In his objections, Carling argues that, even if subject matter jurisdiction is held lacking over the merits, the Court retains jurisdiction over his sanctions motion. *See* Objections 14–23. The Court agrees. *See Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 141 (2d Cir. 2002) ("Although the district court lacked jurisdiction to decide the merits of the underlying action, it retained the power to determine collateral issues, such as the appropriateness of sanctions." (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 137–39 (1992))); *accord Fuerst v. Fuerst*, 832 F. Supp. 2d 210, 218 (E.D.N.Y. 2011); *E. Europe, Inc. v. Transportmaschinen Exp.-Imp.*, No. 85 Civ. 7542 (SWK), 1988 WL 143122 (S.D.N.Y. Dec. 30, 1988) ("The Court agrees that it retains jurisdiction to consider this motion for Rule 11 sanctions, even though the action has been dismissed for lack of subject-matter jurisdiction."). The Court further agrees that, in the interests of economy and expediting this litigation, it is appropriate to resolve that motion now.

A district court has the inherent authority to sanction parties "for acting in bad faith, vexatiously, wantonly, or for oppressive reasons." *Sassower v. Field*, 973 F.2d 75, 80–81 (2d Cir. 1992) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). "The fact that the targeted

party is a *pro se* litigant does not immunize her from the consequences of violating court rules or other legal standards." *Thomas & Agnes Carvel Found. v. Carvel*, 736 F. Supp. 2d 730, 766 (S.D.N.Y. 2010).  However, the Supreme Court has cautioned that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44.  Accordingly, the Second Circuit generally requires a particularized showing of bad faith for the imposition of sanctions under the inherent power doctrine.  *Teamsters*, 948 F.2d at 1345; *Handschu v. Police Dep't of the City of N.Y.*, 679 F. Supp. 2d 488, 502 (S.D.N.Y. 2010).  More specifically, "[a]n award of sanctions under the court's inherent power requires both 'clear evidence that the challenged actions are *entirely without color,* and [are taken] for reasons of harassment or delay or for other improper purposes[,] and a high degree of specificity in the factual findings of [the] lower courts.'"  *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986)) (emphasis and alterations in original).

On its review, the Court cannot conclude that Carling has alleged sufficient bad faith, vexatiousness, or wanton or oppressive conduct to merit sanctions, given the high standard set by the Second Circuit.  As Judge Pitman found in his opinion on the second motion for sanctions, the conduct at issue here is "insignificant, collateral and does not give rise to sanctions pursuant to the Court's inherent power."  Dkt. 184, at 13; *see Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 394 (S.D.N.Y. 2010) (holding that "an isolated instance of perjury, standing alon[e], will not constitute a fraud upon the court" (quoting *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002))). The Court further notes that Peters has already been sanctioned by Judge Baer for her conduct in connection with the underlying litigation.  *See Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, 525 F. Supp. 2d 448, 551

(S.D.N.Y. 2007), *aff'd in part, rev'd in part*, 564 F.3d 110 (2d Cir. 2009).  Related sanctions were imposed upon Peters by the District's Committee on Grievances, but, in 2011,those sanctions were vacated by the Second Circuit, and the matter remanded to the Committee for further proceedings.  *See In re Peters*, 642 F.3d 381, 398 (2d Cir. 2011).  In the exercise of its discretion, the Court declines to countenance an additional round of sanctions litigation based on Peters's alleged misconduct in this follow-on lawsuit.  *See Chambers*, 501 U.S. at 50 (admonishing courts to "exercise caution in invoking [their] inherent power"); *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999) (sanctions decisions are to be made "with restraint and discretion" (citation omitted)).

That said, the record of this litigation supplies a basis for expressing disappointment at Peters's conduct.  The Court admonishes Peters, in any future dealings with this or any other Court, to aspire to a level of professionalism that, regrettably, she has not demonstrated in this litigation.

## CONCLUSION

For the reasons stated herein, the Court adopts the Report in full, and concludes that this case must be dismissed for lack of subject matter jurisdiction. This dismissal is without prejudice to either party's right to pursue their claims in a court with proper jurisdiction.

The Court also denies Carling's third motion for sanctions.

The Clerk of Court is directed to terminate the motion pending at docket number 222 and to terminate all other motions in this case as moot.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: March 8, 2013
       New York, New York